# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANTHONY YBARRA, | Case No.: 1:18-cv-00924-BAM |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | |
| Defendant. | |

## **INTRODUCTION**

Plaintiff Michael Anthony Ybarra ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.
[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 6, 8.)

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for supplemental security income on May 20, 2014, and an application for disability insurance benefits on July 8, 2014. AR 265-66, 267-68.[3] Plaintiff alleged that he became disabled on January 1, 2013, due to sciatic nerve, high blood pressure, fatty liver, sleep apnea, and arthritis in his pelvis and right knee. AR 351. Plaintiff's application was denied initially and on reconsideration. AR 173-76, 183-88. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Matilda Surh held a hearing on July 12, 2017, and issued an order denying benefits on July 19, 2017. AR 16-37, 46-82. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

### **Hearing Testimony**

The ALJ held a hearing on July 12, 2017, in Fresno California. Plaintiff appeared with his attorney, Jeffrey Milam. Impartial Vocational Expert ("VE") Jose Chaparro also appeared. AR 48.

In response to questioning by the ALJ, Plaintiff testified that he was 49 years of age and lived with his girlfriend and her family, which included two children ages 9 and 5. Plaintiff completed high school through the ninth grade and did not finish tenth grade. He does not have any vocational certificates and was not currently working. AR 50-51.

Plaintiff reported that he opened a tattoo shop in 2012 because he could no longer work construction. He owned the shop, but was not a tattoo artist. Some of the artists worked for Plaintiff and some just rented a chair. Prior to that, Plaintiff was a service tech, greasing, fueling, moving and fixing construction equipment. In that job, he had to lift and carry 100 pounds, and was mainly on his feet, bending and climbing. Plaintiff did similar work in 2002, but also worked as a laborer picking up piles of concrete and lifting over 100 pounds. AR 51-55.

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

When asked about chores around the house, Plaintiff testified that his mother-in-law does the laundry. Plaintiff does light cleanup, helps feed the kids and watches the kids at night because his girlfriend works. Plaintiff also drives the kids to school and picks them up. AR 55-56.

When asked about his abilities, Plaintiff testified that he can walk for about a half hour before he needs to sit down because of pain from his back to his legs. His feet will go numb after he stands for about five minutes. He is able to walk a bit longer than he can stand. He can lift about 20 pounds. Plaintiff was on crutches because he sprained his left ankle due to bad balance. He might have torn ligaments and was x-rayed at the hospital. He can still bend at the waist, but it is painful. When he drives, his hands cramp after about half of an hour and his knee burns after an hour. He also constantly has pain in his pelvis because he broke it in a car wreck. AR 56-59. Plaintiff only takes over-the-counter Tylenol for his pain. AR 61.

When asked about a typical day, Plaintiff reported that he can shower or bathe and get dressed without assistance. When he wakes up in the morning, he takes the dog out, feeds and waters the dog and waters the tress and grass outside. He will sit outside and then go back inside and eat, watch TV and wait to pick up the kids from school. After he picks up the kids, he will go home and rest, and then pick up the other kid. He will feed the kids and then watch TV and lay around to ease the pain. When he sits down, he elevates his feet. He also helps out his mother-in-law who is disabled. AR 59-61.

In response to questioning from his attorney, Plaintiff testified that he has to lie down at some point during most days. He probably lies down for about three hours total during an 8-hour day. He changes positions because of discomfort every 10 minutes. He could lift 20 pounds for less than one-third of the day. He has pain down his lower back to his feet after standing for a few minutes. Plaintiff also reported that he has some nasal sinus issues and had polyps removed from his nose. He would have to blow his nose about 30 times per day. AR 63-69.

Plaintiff also confirmed that he went to a Social Security doctor about depression. His doctor also prescribed his medicine for it. Plaintiff agreed with the Social Security doctor who said that he might have some problems with complex things, thinking or memory. He was in special classes and had a tutor throughout elementary school, but attended regular classes in middle school and high school.

3

Plaintiff testified that once past first or second grade, he had trouble with reading and spelling. AR 69-71.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Jose Chaparro. The VE classified Plaintiff's past work as tattoo shop manager, construction worker II and maintenance mechanic. AR 74. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual with the same age, education and work experience as Plaintiff who was capable of a range of medium exertional work with the ability to lift 50 pounds occasionally, 25 pounds frequently, stand, walk, and/or sit for six out of eight hours with frequent climbing of ramps or stairs, but only occasionally ladders, ropes or scaffolds, and frequent stooping, kneeling, crouching and crawling. The VE testified that the tattoo artist manager position would be available, but not as actually performed, and the maintenance mechanic would be available, but only as customarily performed. AR 74-75.

For the second hypothetical, if the ALJ reduced the exertional level to light with all other limitations remaining the same, the VE testified that the tattoo shop manager position would be available, but not as actually performed. The VE also testified that there would be other jobs available such as cashier II, sales attendant, and housekeeping cleaner. AR 75-76.

For the third hypothetical, the ALJ asked the VE to add that the individual would need to sit at regular intervals, such as every half hour, and then stand or walk. The VE testified that the cashier II position would be available but eroded by approximately 90 percent. The VE also testified that there would be other jobs available, such as ticket seller or sub assembler. AR 77-79.

For the fourth hypothetical, the ALJ asked the VE to add that the individual would additionally need unscheduled, non-working breaks of 20 to 30 minutes two or three times per day to elevate the legs. The VE testified that there would be no work at all for this individual. AR 79.

The VE confirmed that his testimony was based on his years of training, education and experience, along with his access to methodologies and professional resources, such as the DOT. AR 79.

///

///

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 19-31. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since January 1, 2013, his alleged onset date. AR 21. The ALJ identified lumbar degenerative disc disease and obesity as severe impairments. AR 21-24. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 24-25. Based on a review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, including lifting and carrying 50 pounds occasionally and 25 pounds frequently, standing or walking for six hours, and sitting for six hours in an eight-hour workday with the following restrictions: frequently stooping, kneeling, crouching, crawling and climbing stairs and ramps and occasionally climbing ladders, ropes and scaffolds. AR 25-30. With this RFC, the ALJ found that Plaintiff could perform his past relevant work as a maintenance mechanic. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 30.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d

1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff contends that the ALJ erred by (1) finding his mental health impairments nonsevere; and (2) improperly rejecting the opinions of treating and examining sources regarding his physical limitations.

## DISCUSSION[4]

### A. Mental Impairment

Plaintiff contends that the ALJ erred in failing to find his mental impairments severe at step two of the sequential evaluation, improperly evaluated the medical opinion evidence and failed to include Plaintiff's mental limitations in the RFC finding at step four. (Doc. No. 14 at 7-12.)

At step two of the five-step analysis, the ALJ is required to determine whether a plaintiff has a "severe" medical impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Once those impairments have been ascertained, the ALJ must interpret the functional limitations imposed by the impairments into an RFC assessment. 20 C.F.R. §§ 404.1520(e), 416.945; *Palomares v.*

---
[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

6

*Astrue*, 887 F.Supp.2d 906, 919 (N.D. Cal. 2012). The RFC is then used to pose hypothetical questions to a vocational expert to determine whether the plaintiff can perform work that exists in significant numbers in the national economy or past relevant work. *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014).

A failure to include an impairment in the analysis at step two is only harmful error if the ALJ fails to consider the functional limitations that flow from that impairment at later steps in the sequential evaluation. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless."). In creating the RFC, an ALJ need only consider limitations that are supported by objective evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("We will affirm the ALJ's determination of Bayliss's RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence. In making his RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on Bayliss's subjective complaints. Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

Plaintiff first asserts that the ALJ erred by failing to acknowledge the opinion of examining physician, Dr. Julian Smith. On March 21, 2009, Dr. Smith conducted a comprehensive psychiatric evaluation and determined that Plaintiff did not appear to be capable of managing his own funds due to deficits in intellectual functioning, but did have the ability to perform simple and repetitive tasks. Dr. Smith also opined that Plaintiff seemed capable of accepting instruction and interacting with others in the workplace, but may require some special or additional instructions as they pertain to work activities. Dr. Smith noted that Plaintiff required a fair amount of assistance with activities of daily living, but may be able to maintain regular work attendance though this would likely need to be assisted. AR 433-34.

Plaintiff correctly notes that the ALJ did not mention this opinion in her assessment of Plaintiff's mental impairments. However, as the Commissioner points out, this opinion predates the alleged onset of disability in 2013. "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir.2008); *Burkhart v.*

*Bowen*, 856 F.2d 1335, 1340 n. 1 (9th Cir.1988) (concluding ALJ correctly rejected medical evidence because it predated the relevant time period); *Ingham v. Astrue*, No. SA CV 09–931–SH, 2010 WL 1875651, at *3 (C.D. Cal. May 10, 2010) (concluding "medical opinions of any physician, treating or examining, which predate the alleged onset of disability are not considered substantial evidence") (citation omitted). The ALJ therefore did not err in failing to mention or consider Dr. Smith's 2009 opinion. Further, the ALJ considered more recent evidence from consultative examiner, Dr. Ekram Michiel, who examined Plaintiff in April 2013 and December 2014. AR 22. "The Ninth Circuit has found that medical reports that are most recent are more highly probative than those which were rendered at some earlier time." *Barraza v. Colvin*, No. 2:13-CV-0430 JAM DAD, 2014 WL 651909, at *5 n. 3 (E.D. Cal. Feb. 19, 2014).

Plaintiff next argues that the ALJ erred by discounting the opinion of Dr. Michiel, who opined in both April 2013 and December 2014 that Plaintiff was able to maintain attention and concentration to carry out simple repetitive job instructions, relate and interact with coworkers, supervisors and the general public, was unable to carry out an extensive variety of technical and/or complex instructions, had no restrictions on activities of daily living and was able to handle his own funds. AR 481-84, 535-38. In this instance, the ALJ provided a summary of Dr. Michiel's December 2014 evaluation findings and ultimately assigned "little weight" to Dr. Michiel's opinions from 2014 and 2013. AR 22-23. The ALJ reasoned as follows:

> On December 19, 2014, after completion of a psychiatric evaluation, consultative psychiatrist Dr. Michiel opined that the claimant could maintain attention and concentration to carry-out simple job instructions. He could relate and interact with coworkers, supervisors, and the public. He was unable to carry-out an extensive variety of technical or complex instructions. He was able to handle his own funds (Exhibit 14F, p. 5.) Dr. Michiel also completed a psychiatric evaluation of the claimant on April 5, 2013 and opined that the claimant could maintain attention and concentration to carry-out simple job instructions. He could relate and interact with coworkers, supervisors, and the public. He was unable to carry-out an extensive variety of technical or complex instructions. (Exhibit 10F, p. 7). This opinion was given little weight because it was inconsistent with the medical record and the claimant's lack of mental health treatment.

AR 22-23. Plaintiff asserts that the ALJ did not articulate specific and legitimate reasons for rejecting the opinion evidence of Dr. Michiel. The Court agrees.

In evaluating the opinion of an examining physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even if contradicted, the opinion of an examining physician can only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830–31. The opinion of a nonexamining physician alone is not substantial evidence that justifies the rejection of the opinion of an examining physician. *Id.* at 831.

As indicated above, the ALJ first discounted Dr. Michiel's assessment based on Plaintiff's apparent failure to obtain mental health treatment. An ALJ may properly reject an examining physician's opinion on this basis. *See King v. Comm'r of Soc. Sec. Admin.*, 475 Fed.App'x 209, 210 (9th Cir. 2012) (holding an ALJ's rejection of an examining physician's opinion because of "the absence of mental health treatment records" was a clear and convincing reason). In this case, however, Plaintiff's medical records reflect that he was, in fact, treated for "chronic depression" by his physician from 2013 through 2017, and was prescribed medication for his condition, which appears to have been increased. AR 498, 541, 542, 547, 559. While these records are admittedly sparse, in the context of mental health treatment, the Ninth Circuit has recognized "the fact that [a] claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis" on which to conclude a physician's assessment is inaccurate. *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (noting "it is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness"). Indeed, the Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F. 3d 1294, 1299-1300 (9th Cir. 1999) (citations omitted). Thus, the ALJ's decision to discount Dr. Michiel's assessment based on Plaintiff's lack of mental health treatment records was not a specific and legitimate reason supported by substantial evidence.

The ALJ also discounted Dr. Michiel's assessment based on an assertion that it was inconsistent with the medical record. AR 23. This also is not a specific and legitimate reason supported by

substantial evidence. The ALJ's discussion of Plaintiff's mental health treatment records was limited to a statement that Plaintiff was prescribed Prozac in 2017 for his symptoms of depression and anxiety. AR 22. The ALJ does not address any other treatment records or explain how the cited record failed to support Dr. Michiel's opinion regarding Plaintiff's mental impairment.

Additionally, Plaintiff claims that for the same reasons, the ALJ erred in rejecting the opinions of the State agency consultants, Drs. Brady Dalton and M. Vea. (Doc. No. 10.) In assigning "little weight" to these opinions, the ALJ reasoned as follows:

> On January 14, 2015, after a review of the medical record, State agency medical consultant psychologist Brady Dalton, Psy.D. opined that the claimant was able to understand, remember and carry-out simple instructions. He had sufficient ability to complete simple instructions, follow directions without additional assistance, and maintain adequate attention, concentration, persistence, and pace as needed to complete a full workday and workweek. He was able to interact with supervisors, coworker, and the public. He was able to adapt to the demands of unskilled work (Exhibit 5A, p. 13). On April 16, 2015, after a review of the medical record, State agency medical consultant psychiatrist M. Vea, M.D. opined that the claimant was able to understand, remember, and carry-out simple instructions. He had sufficient ability to complete simple instructions, follow directions without additional assistance, and maintain adequate attention, concentration, persistence, and pace as needed to complete a full workday and workweek. He was able to interact with supervisors, coworker, and the public. He was able to adapt to the demands of unskilled work (Exhibit 9A, p. 8). These opinions were given little weight because they were inconsistent with the medical record, examination findings, and the overall evidence of record. Upon examination, the claimants' speech was normal. His mood was depressed and his affect was intense and tearful. He denied suicidal or homicidal ideation. His thought process was goal directed. His thought content was not delusional. He denied hallucinations and illusions, except at night he could see shadows. He was able to do digit span five out of five forward and four backwards correctly. He was able to recall three out of three times immediately and two after five minutes. He appeared able to do simple math calculations. Overall, there was no evidence that the claimant's mental impairments caused more than minimal impact upon basic work activities.

AR 23.

For the same reasons discussed above in connection with Dr. Michiel, the ALJ's decision to discount these opinions based on the medical record is not adequate. Further, although an ALJ may properly discount a physician's opinion that is not supported by examination findings, *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002), the ALJ ignores examination findings supporting Plaintiff's limitation to simple instructions and unskilled work. For instance, the ALJ omits that on examination in December 2014, Plaintiff had a "below average" fund of knowledge, he was unable to recall what he

10

ate at his last meal and his remote memory showed a slight impairment. AR 536-37. Additionally, in April 2013, Plaintiff's mood was depressed and his affect was restricted and sad. Plaintiff also admitted to paranoid ideation, along with auditory and visual hallucination, he has some impairment in his remote memory and his fund of knowledge was average. AR 482-83.

The Court therefore finds that the ALJ erred at step of the sequential evaluation by finding Plaintiff's mental impairment not severe. Nonetheless, the Court finds that any alleged error was harmless because it was inconsequential to the ultimate disability determination. *See Tommasetti v. Astrue*, 533 F.3d a1035, 1038 (9th Cir. 2008) (holding error is harmless if it is "inconsequential to the ultimate nondisability determination"). In "each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina v. Astrue*, 674 F.3d at 1115 (internal citations and quotation omitted).

According to the opinions of Dr. Michiel and the State agency physicians, Plaintiff was limited to simple, repetitive, unskilled work.[5] In response to questioning from the ALJ, the VE testified that there was other unskilled, light work in the national economy that Plaintiff could perform, including casher II (DOT code 211.462-010) with 847,000 jobs nationally, sales attendant (DOT code 299.677-010) with 214,000 jobs nationally, and housekeeping cleaner (DOT code 323.687-014) with approximately 134,000 jobs nationally. AR 75-76. Of these representative jobs, housekeeping cleaner is consistent with a limitation to simple, repetitive unskilled work because it has an SVP of 2 and requires only Level 1 reasoning. *See* Cleaner, Housekeeping, DICOT 323.687-014, 1991 WL 672783; *Lara v. Astrue*, 305 Fed.App'x. 324, 326 (9th Cir. 2008) (holding that limitation to "simple, repetitive tasks" does not conflict with "Reasoning Level 1 and 2 jobs"); *Conrad v. Berryhill.*, No. CV 16-7987-JPR, 2018 WL 437460, at *7 (C.D. Cal. Jan. 16, 2018) (finding limitation to simple instructions does not conflict with level-one-reasoning jobs); *Xiong v. Comm'r Soc. Sec. Admin.*, No. 1:09-cv-00398-SMS,

---

[5] In his reply, Plaintiff contends that it is mere speculation as to these RFC limitations because Dr. Dalton identified certain moderate limitations. (Doc. No. 19 at 4.) Although Dr. Dalton identified certain moderate limitations, he explained that these limitations equated with Plaintiff's ability to understand, remember and carry out simple instructions and that Plaintiff had a sufficient ability to complete simple instructions, to follow directions without additional assistance, and to maintain adequate attention, concentration, persistence and pace as needed to complete a full work day/work week. AR 112. As a result, Dr. Dalton's opinion is consistent with an RFC for simple work.

2010 WL 2902508, *6 (E.D. Cal. July 22, 2010) ("Courts within the Ninth Circuit have consistently held that a limitation requiring simple or routine instructions encompasses the reasoning levels of one and two") (collecting cases); SSR 00-4p ("[U]nskilled work corresponds to an SVP of 1-2."). The VE's testimony that there were approximately 134,000 housekeeping cleaner jobs in the national economy is a significant number. *Gutierrez v. Colvin*, 740 F.3d 519, 527-29 (9th Cir. 2014) (holding that 25,000 national jobs constituted a significant number). Because the VE's testimony established that there were other jobs that Plaintiff could perform if he were reduced to simple, repetitive unskilled work, the ALJ's conclusion that Plaintiff did not have a severe mental impairment was inconsequential to the non-disability determination. *See Tommasetti*, 533 F.3d at 1038; *see also* 20 C.F.R. § 404.1520(a)(4)(v), (g) (claimant not disabled if he can perform a significant number of jobs).

**B.     Physical Impairment**

Plaintiff argues that the ALJ erred in weighing the medical opinion evidence concerning his physical limitations by according deference to the opinions of the State agency physicians while rejecting the opinions of Dr. Steven Stoltz, a consultative examiner, and Dr. Zakharyan, his treating physician.

<u>Dr. Stoltz</u>

As an initial matter, Plaintiff contends that the ALJ erred by failing to acknowledge Dr. Stoltz's opinion rendered in 2009, which was before Plaintiff's alleged onset date. (Doc. No. 14 at 12.) As discussed, an examining physician's medical opinion which predates the alleged onset of disability is not considered substantial evidence and is of limited relevance. *Carmickle*., 533 F.3d at 1165; *Burkhart*, 856 F.2d at 1340 n. 1. The ALJ therefore did not err in failing to weigh Dr. Stoltz's 2009 opinion. Further, the ALJ considered more recent, probative evidence from Dr. Stoltz, who conducted a second consultative examination of Plaintiff in April 2013. AR 22, 472-77; *Barraza* 2014 WL 651909, at *5 n. 3.

Plaintiff next argues that the ALJ erred in discounting Dr. Stoltz's 2013 opinion. According to the record, Dr. Stoltz completed a second consultative evaluation of Plaintiff on April 2, 2013. AR 472-77. Plaintiff complained of chronic pelvic pain and right knee pain. AR 472. On physical examination, Plaintiff's neck range of motion was within normal limits, he had no back pain with knee extension in

12

the seated position, negative straight leg raising in the supine position, and no spinal tenderness on standing. Dr. Stoltz noted that Plaintiff showed poor effort with range of motion testing of his back and was only able to achieve 45 degrees of forward flexion complaining of deep pelvic pain, but his range of motion in his upper and lower extremities, including his hips and knees was within normal limits. Although Plaintiff had fairly significant anterior crepitation with flexion and extension of his knee, he had no restricted range of motion and no effusion. He had some mild-to-moderate tinea pedis and pes planus bilaterally. He also had good tone bilaterally with good active motion, strength of 5/5 in all extremities and normal reflexes. His gait was slow, but with no focal or asymmetrical findings. AR 474-76. Based on this evaluation, Dr. Stoltz opined that Plaintiff could stand and walk up to four hours in an eight-hour day, sit without restriction and occasionally climb, balance, stoop, kneel and crouch. He could lift and carry 10 pounds occasionally, but had no manipulative limitations. He also had no visual, communicative or workplace environmental limitations. AR 476-77. The ALJ assigned this opinion little weight. AR 29.

Plaintiff now asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of Dr. Stoltz. The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. Lester, 81 F.3d at 830–31. In this instance, the Court finds that the ALJ provided specific and legitimate reasons to discount Dr. Stoltz's opinion.

First, the ALJ discounted Dr. Stoltz's limitations because they "were overly restrictive given normal examination findings." AR 29. An ALJ may properly reject a medical opinion that is inadequately supported by medical findings. *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is ... inadequately supported by clinical findings."); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992) (holding that an ALJ may discount the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings). As the ALJ noted, Plaintiff's straight-leg raising was negative, he showed poor effort with range of motion testing and was only able to achieve 45 degrees of forward flexion, but his range of motion was otherwise normal, and his motor strength was 5/5 in all extremities. He also had

no restricted range of motion of his right knee and no effusion. AR 27, 474-76. This was a specific and legitimate reason to reject Dr. Stoltz's opinion.

Second, the ALJ discounted Dr. Stoltz's limitations because they were inconsistent with Plaintiff's treatment history. AR 29. An ALJ may reject the opinions of a physician where the opinions are inconsistent with the overall record. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999). As the ALJ correctly noted, the medical record showed minimal treatment for Plaintiff's lumbar degenerative disc disease and right knee injury from his alleged 2013 onset date through 2017.[6] AR 26, 27, 497-502, 541-42. Additionally, an x-ray of Plaintiff's right knee showed minimal degenerative changes, and a lumbar x-ray showed primarily degenerative changes with normal sacroiliac joints and no soft tissue abnormality. AR 26, 485, 556. Further, Plaintiff admitted to treating only with Tylenol for his back pain. AR 27, 61. Thus, this also was a specific and legitimate reasons supported by substantial evidence to discount Dr. Stoltz's opinion.

For these reasons, the Court finds that the ALJ did not err in his evaluation of Dr. Stoltz's opinions.

Dr. Zakharyan

Plaintiff also argues that the ALJ failed to provide specific and legitimate reasons to discount the opinion of his treating physician, Dr. Sergei Zakharyan, rendered in 2017. (Doc. No. 14 at 13.) On June 14, 2017, Dr. Zakharyan completed a one-page questionnaire. In that questionnaire, Dr. Zakharyan opined that Plaintiff could lift and carry about 15 pounds for 2-3 hours over an 8-hour workday, could sit for one hour at a time, stand/walk15-30 minutes at one time, sit for six hours over an 8-hour period and stand/or walk for one hour over an 8-hour period, and lie down/elevate for the remaining hour. Dr. Zakharyan indicated that Plaintiff had been disabled "since the date he applied for disability?" AR 563.

As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Lester*, 81 F.3d at 830. Where, as here, the treating

---

[6] These treatment records also are nearly illegible. It is Plaintiff's burden to present evidence of a disability. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are … disabled….").

14

physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.*

Here, the ALJ assigned little weight to Dr. Zakharyan's opinion because it was inconsistent with the medical record and overall evidence of record. AR 29. An ALJ may properly reject a treating physician's opinion that is inconsistent with the overall record. *Morgan*, 169 F.3d at 602-03. In this instance, the ALJ cited the relatively normal findings on examination by Dr. Stoltz and appropriately noted throughout his decision that the relevant medical treatment record was sparse. AR 28, 29. Moreover, it was appropriate for the ALJ to reject what essentially amounted to a "check-off" report that did not contain any explanation or basis for Dr. Zakharyan's opinion. *See Molina*, 674 F.3d at 1111-12 (holding that an ALJ may reject "check-off reports that [do] not contain any explanation of the bases of their conclusions"), quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Thomas*, 278 F.3d at 957. The Court therefore finds that the ALJ did not err in his evaluation of Dr. Zakharyan's conclusory opinion.

In addition to the above, the ALJ also appropriately relied on the State agency physicians' opinions in discounting the limitations identified by Drs. Stoltz and Zakharyan. AR 29-30. On September 29, 2014, State agency consultant Dr. R. Betcher opined that Plaintiff could lift and carry 50 pounds occasionally, 25 pounds frequently, could stand or walk about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday, could frequently climb ramps/stairs, stoop, kneel, crouch and crawl and could occasionally climb ladders/ropes/scaffolds. He did not have any manipulative, visual, communicative or environmental limitations. AR 110-11. On May 4, 2015, State agency consultant Dr. H. Han similarly opined that Plaintiff could lift and carry 50 pounds occasionally, 25 pounds frequently, could stand and walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday. He could frequently climb ramps/stairs, stoop, kneel, crouch and crawl and could occasionally climb ladders/ropes/scaffolds. He had no manipulative, visual, communicative or environmental limitations. AR 143-44. The ALJ assigned these opinions "substantial weight" because they were consistent with the medical record and overall evidence of record. AR 30. The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Thomas*, 278 F.3d at 957.

Here, the opinions of Drs. Betcher and Han were consistent with evidence in the record relative to Plaintiff's essentially normal objective findings on examination, along with the x-rays of his knee and lumbar spine, minimal treatment and use of over-the-counter pain medication.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Michael Anthony Ybarra.

IT IS SO ORDERED.

Dated: **September 27, 2019**    /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE